H. S. HOWARD, *et al.*, Administrators, v. LISTON MCMIL-LEN, Executor, Appellant.

**Rescission: RESTITUTION:** *Settlement.* The return of money recei ed upon a contract of settlement obtained by fraud, is not necessary in order to rescind, when the money is due, whether the contract stands or not. Citing *Pierce v. Wood*, S. Fost. N. H. 519.

**Fraud in Settlement.** · Failure of a judgment debtor to disclose the fact that he had concealed a large amount of property, is such fraud as will avoid a settlement of the judgment for less than its amount, where the debtor had avoided payment of the judgment, on which execution had been returned unsatisfied, had deposited his money in bank in another town, denied to the assessor and others that he had any property, and had generally so conducted his affairs as to cause his creditors to believe him insolvent although no false statements were made at the time settlement occurred.

*Appeal from Mahaska District Court.*—HON. BEN MCCOY, Judge.

THURSDAY, APRIL 8, 1897.

PROCEEDING in probate to establish a claim against the estate of G. W. Norton, deceased. There was a trial by the court, and an order allowing and directing the payment of the claim. The defendant appeals.—*Affirmed.*

*Liston McMillen* for appellant.

*W. W. Haskell* and *John O. Malcolm* for appellees.

ROBINSON, J.—In September, 1866, James Loughridge was appointed guardian of three minors named Podgett, and gave a bond in the penal sum of five hundred dollars to secure the faithful performance of his duties as guardian. H. Howard and G. W. Norton signed the bond as sureties. In the year 1879, Loughridge made a final report, and it was found that there was due to two of the minors sums which amounted in the aggregate to more than nine hundred dollars. An order was made removing Loughridge as guardian and appointing C. P. Searle to succeed him. Loughridge failed to pay to the proper person the amount for which he was responsible as guardian, and an action was brought against him and the sureties on his bond by one of the Podgetts, to recover the sum due him. Searle appears to have been substituted as plaintiff, and on the twenty-fifth day of April, 1879, judgment was rendered in his favor, against Loughridge, for three hundred and eighty-two dollars and sixty-six cents, and against Norton as surety, for two hundred dollars, and costs. The cause was continued as to Howard. He paid liabilities incurred by the sureties to the full amount of the bond, and judgment in that action was not rendered against him. The judgment was not paid, and it is claimed that Howard became the owner of it. In April, 1893, Norton not having paid anything on account of his suretyship, a settlement was effected between him and Howard, by which, in consideration of eighty-five dollars then paid by Norton, Howard assigned to him an undivided one-half of the rights he had acquired by reason of the payments he had made under the bond, and released

all claims for contribution which he had against Norton. In March, 1894, Howard died, intestate, and the plaintiffs were appointed administrators of his estate. About a year later, Norton died, and the defendant is the executor of his will. The plaintiffs have filed against Norton's estate a claim for the amount due on the judgment rendered in favor of Searle, and against Norton. The defendant filed an answer, which, among other defenses, pleaded the statute of limitations and the settlement of April, 1893. The plaintiffs filed a reply, in which they admitted the settlement, but alleged that it was fraudulent and void, excepting as to the payment of eighty-five dollars, for the reason that it was entered into in consequence of the false and fraudulent representations of Norton, that he had no money or other property, and was insolvent, whereas the fact was that at that time he had property which he concealed, to the amount of seven thousand dollars; that he was then owing to Howard the sum of three hundred and seventy-one dollars and eighty-six cents, but that the latter was deceived by the representations made to him, and agreed to the settlement in consequence of his belief that they were true. A demurrer to the reply, based on the ground that it did not show that the money paid to Norton, under the settlement, had been repaid or tendered to him, was overruled. The district court allowed the sum of three hundred and eighty-two dollars on the claim of the plaintiffs, and ordered its payment by the defendant.

I. The averments of the reply admitted by the demurrer showed that the contract for settlement was obtained by fraud on the part of Norton, and for that reason could have been rescinded by Howard, if he elected so to do when he discovered the fraud. The money received by him was due him whether he rescinded the contract or not.

Therefore it was not necessary to return it in order to rescind. *O'Brien v. Railway Co.*, 89 Iowa, 644 (57 N. W. Rep. 425), and cases therein cited. *Pierce v. Wood,* 3 Fost. (N. H.) 519. The plaintiffs stand in the place of Howard, and may rescind, as he could have done under the same circumstances. We conclude that the demurrer to the reply was properly overruled.

II. The appellant complains of rulings of the district court on the admission of evidence, and insists that the competent evidence does not show that the settlement in question was obtained by fraud. The settlement was effected on the part of Howard by W. W. Haskell, his attorney, and was reduced to writing, and signed in the name of Howard. Haskell is an administrator of the estate of Howard, one of the plaintiffs in this case, and the husband of one of his daughters. Haskell testified at considerable length in regard to his knowledge of Norton's financial condition at the time the settlement was made, and the evidence justifies the conclusion that both he and Howard believed Norton to be without property and insolvent at that time. That belief was based in part upon examination of the public records, made by Haskell, upon inquiries made by the assessors and others, and upon unsuccessful attempts to collect the judgment in question. The evidence also justifies the conclusion that Norton owned money and other property subject to execution at the time of the settlement, and at the time of his death, to the amount of nearly seven thousand dollars, all of which he kept concealed from his creditors, and the claims filed against his estate aggregate less than two thousand dollars. It is clear that, had Haskell or Howard known what Norton's true financial condition was, the settlement would not have been made. But there is no evidence in regard to representations made by Norton directly to

Howard, or to Haskell to induce the settlement.
Haskell was incompetent, under section 3639 of the
Code, to testify in regard to any personal transaction
or communication between himself and Norton, and
the defendant objected to his so testifying. The case
must, therefore, be determined upon the assumption
that no direct representations were made by Norton
to Howard, or to Haskell, to induce the settlement.
Hence we are required to determine whether there
was sufficient evidence of fraud to justify the district
court in finding that the settlement was fraudulent.
It is the general rule that the mere silence of a person
in regard to facts which it is not his duty to disclose
is not fraudulent. 1 Bigelow, Frauds, 590; 5 Am. &
Eng. Enc. Law, 336; *Graham v. Meyer*, 99 N. Y. 611
(1 N. E. Rep. 143.) But, where silence would be mis-
leading, a duty to speak may arise. A person may,
under some circumstances, by passive conduct or
silence, knowingly and intentionally deceive and mis-
lead another, and thus perpetrate a fraud. 1 Bigelow,
Frauds, 16, 597. In this case it is shown that Norton
had so conducted his affairs and managed his property
as to cause his creditors to believe he was insolvent.
Although he lived in Oskaloosa, he deposited his
money in Ottumwa banks. He invested some of
his money in loans which had been taken by
others where his ownership was not made
public. He denied to the assessor that he had
any taxable property excepting a watch. He
denied to various persons that he had property, and in
various ways sought to convey the impression that he
had none. He succeeded in preventing the collection
of the judgment in question, and an execution issued
thereon was returned, wholly unsatisfied. The dis-
trict court was authorized to find that the course he
had openly pursued in regard to his property, was
designedly fraudulent, and that the settlement in

question was made in consequence of his fraudulent course of procedure; that he had designed to make his creditors, including Howard, believe that he was without property; and that he knew Howard and his attorney believed him to be insolvent, and made the settlement relying upon that belief; and that the settlement would not have been made had they known the facts. In other words, the conclusion of the district court, that the settlement was fraudulent on the part of Norton, is sustained by the evidence.

III. The appellant objects that it is not shown that the judgment in question was properly rendered in favor of Searle; that it is not shown that it was duly assigned to Howard; and that the claim of the plaintiffs is barred by the statute of limitations. We do not find that any one of these objections is well founded. All questions presented by the appellant in argument have been examined, but we do not find any ground upon which the order of the district court should be disturbed. It is, therefore, AFFIRMED.