415 P.2d 43

**Arthur A. FAIRCHILD, Plaintiff-Respondent,**

v.

**Neill MATHEWS, Defendant-Appellant.**

No. 9550.

Supreme Court of Idaho.

June 7, 1966.

C. H. Higer, Emmett, for appellant.

Ryan & Speropulos, Weiser, for respondent.

SPEAR, Justice.

This is an action brought by respondent, Arthur A. Fairchild, to recover the balance claimed due and owing on a contract for labor and services performed on appellant's land.

During the month of March or April, 1961, Fairchild and appellant's nephew entered into an oral agreement for certain land leveling work to be performed on a portion of Mathews' land known as the "Home Forty" upon which Mathews' residence was located. Pursuant to said agreement respondent furnished a D7 caterpillar tractor, a scraper and other allied equipment such as a ripper and dozer, and an operator for the purpose of leveling this land. The parties agreed respondent should be paid at the rate of $12.50 per hour for the time spent when the machines were actually operating.

Respondent hired Sydney Christensen as his operator and the leveling work was performed on the Home Forty from May 1, 1961 through May 23, 1961. Additionally, four hours of work were performed on the Home Forty on June 13, 1961. During this time Christensen recorded the hours actually spent operating the machines and said record was admitted into evidence as Plaintiff's Exhibit 1.

While work was being performed on the Home Forty appellant approached respondent for the purpose of having certain work done on another tract of land owned by appellant and known as the "West Forty." Orally it was agreed that respondent was to level a certain hill on this tract, fill a certain existing drain ditch, and dig another drain ditch closer to the southern boundary of this tract.

The price to be paid for this work is in complete dispute. Respondent testified that no definite price was stated or agreed upon and he merely assumed it was understood by both parties that payment was to be made at the rate of $12.50 per hour just as it was on the Home Forty. He further testified that his estimate to appellant of the total cost of this work would amount to from $1000 to $1200. On the other hand appellant testified it was definitely agreed by the parties that the price for this additional work on the West Forty was to be $300 if respondent performed the ditch work personally and $250 if respondent hired a third party to perform that part of the work.

The work was performed on the West Forty from May 24, 1961 through June 24, 1961. Again Christensen kept a written record of the actual hours spent operating the machines, as shown in Plaintiff's Exhibits 1 and 2. A summary of these two records was made by respondent and admitted into evidence as Plaintiff's Exhibit 3. These exhibits show 178 hours of work done on the Home Forty and 137 hours on the West Forty. However, in a letter written by respondent to the A.S.C.P. Committee of Payette County, respondent indicated only 160½ hours of work performed on the Home Forty, but this does not include the four hours of work performed on June 13 (Plf.Exh. 5).

Respondent received payments from the Federal Land Bank and appellant totalling $2,175.

Additionally, respondent received a check of $250 dated March 29, 1962 from appellant, and written on the face thereof is the following:

"Leveling in full. Home Place." (Plf. Exh. 8) This check was accepted by respondent on April 2, 1962. Appellant testified in effect that prior to the execution of this check the parties were in dispute concerning the balance due respondent for the work performed and that payment by this check constituted payment in full and closed the entire transaction. This was the purpose of the notation, "Leveling in full. Home Place." To the contrary respondent testified there was no intention on his part of accepting the $250 check (Plf.Exh. 8) as payment in full because he had already received payment in excess of that to which he was entitled for the leveling work performed on the "Home Forty" and to him the notation "Home Place" really meant the "Home Forty." He also testified to several attempts to secure further payments for the work which had been performed on the West Forty, after receipt of the check from appellant. These proving unavailing, plaintiff filed his complaint on September 19, 1963 seeking recovery from appellant in the sum of $1,512.50, together with interest from April 2, 1962, claiming this as a balance due for 315 hours of work performed.

Appellant answered with a general denial alleging respondent had been paid in full, and, as an affirmative defense, alleged that by the payment of $250 by check, Plf. Exh. 8, all claims had been settled and payment therefor accepted by respondent.

After a trial by the court sitting without a jury, the court found and concluded that respondent had performed work on the Home Forty for a total of 164½ hours, that at the rate of $12.50 per hour as agreed upon by the parties, respondent was entitled to $2,056.25, that respondent had received payments totalling $2,425 (including the $250 check) and there was therefore an overage of $368.75 to be applied to the amount due for work performed on the West Forty. The court further found and concluded that concerning the West Forty there had been no meeting of the minds between the par-

ties as to the price to be paid, and therefore appellant should be required to pay a reasonable price; or to put it another way, the respondent was entitled to receive a reasonable value for services performed, and that the reasonable value would be 60% of $12.50 per hour, which for 137 hours of work would total $1,027.50. Deducting therefrom the overage previously found, the balance due was computed by the trial court as $658.75.

To these findings respondent objected on the ground there was no evidence to support a finding of quantum meruit or reasonable value of services performed at anything less than the full $12.50 per hour. After hearing thereon the trial court concluded that such objection was well taken and in amended findings of fact found that the reasonable value of the work done on the West Forty was the full $12.50 per hour and the true balance due respondent was $1,343.75, together with interest from July 2, 1962. Judgment was entered accordingly.

In his appeal from this judgment appellant lists three assignments of error: (1) that the court erred in not finding acceptance of the $250 check of March 29, 1962 amounted to an accord and satisfaction; (2) that the court erred in reversing its memorandum decision by finding in quantum meruit for the full $12.50 rather than 60% thereof as the reasonable value for services performed, thus in effect granting respondent all he had asked for in his complaint; and (3) that the court erred in not allowing appellant and his wife to testify what was understood to be defined as the "Home Place" as indicated on the check (Plf.Exh. 8).

We find no merit in any of these assignments of error.

Accord and satisfaction is a method of discharging a contract or cause of action, hereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the "accord" being the agreement and the "satisfaction" its execution or performance.

To constitute an accord and satisfaction there must be an offer in full satisfaction of the obligation accompanied by such acts and declarations as amount to a condition that if it is accepted, it is to be in full satisfaction, and the condition must be such that the party to whom the offer is made is bound to understand that if he accepts it, he does so subject to the conditions imposed. Nordling v. Whelchel Mines Co., 90 Idaho 213, 409 P.2d 398; Clay v. Rossi, 62 Idaho 140, 108 P.2d 506; 1 Am.Jur.2d, Accord and Satisfaction, § 1, p. 301; 1 C.J.S. Accord and Satisfaction § 6, p. 476.

In order for the acceptance of a check to amount to an accord and satisfaction, where it is for a lesser sum than is claimed by the creditor to be due, the conditions must be made plain, definite and certain by the debtor that he is giving such check in complete settlement and satisfaction of all account between him and his creditor and that acceptance thereof shall close the account or controversy. Also an accord and satisfaction cannot arise by reason of the payment of less than is due, unless it clearly appears not only that this was the intention of the payor, but also that the payee expressly agreed to it, or was bound to know of the intention at the time of the acceptance; in effect, that his taking of a check would be tortious except upon the assumption of a taking in full satisfaction. It cannot be too strongly stated that an accord and satisfaction can never be implied from language of doubtful meaning; indeed, the words themselves deny this possibility. Hence, where a substantial doubt arises, there can be no such application, the usual rule applies, and the payment will be treated as on account only. Clay v. Rossi, supra; Lovekin v. Fairbanks, Morse & Co., 282 Pa. 100, 127 A. 450, 451 (1925). See Nordling v. Whelchel Mines Co., supra, where this language is quoted and accepted.

To constitute an accord and satisfaction there must be an agreement by the creditor to accept less than full payment and whether the creditor did accept the

debtor's proposition as satisfaction is ordinarily a question of fact. Also where the question of whether the debtor tendered the check in full payment of the sum due or whether the creditor with the knowledge that the check was so tendered accepted it, is one of fact for the jury inasmuch as it involves an intention as expressed by the acts and statements of the parties. 1 Am.Jur.2d, Accord and Satisfaction, §§ 16 and 18, pp. 314 and 317-318.

As stated in Clay v. Rossi, supra:

"The defense of accord and satisfaction is, in effect, a substitution of a new contract for a previous contract or tort; and the rule is, that the burden of proof is on the one who relies on the new contract in settlement of the old obligation or controversy."

That opinion also recognizes the rule that where circumstances permit of reasonable inferences that there was or was not an accomplished accord, the question is one for the jury.

 Thus it is clear that the burden of proving all the elements of an accord and satisfaction was, in this case, placed upon the appellant. The trial court, after weighing the conflicting evidence submitted by the parties during the course of the trial, found and concluded that appellant had not borne this burden of proof. Instead the court found that there had been no meeting of the minds, either in the original contract or in an accord and satisfaction and therefore found for the respondent on the basis of quantum meruit. We must, therefore, apply the well recognized rule that where findings of the trial court, sitting without a jury, are supported by substantial competent, though conflicting, evidence such findings will not be disturbed upon appeal. Edgeller v. Johnston, 74 Idaho 359, 262 P.2d 1006; Freedman v. Hendershott, 77 Idaho 213, 290 P.2d 738; Nichols v. Knowles, 87 Idaho 550, 394 P.2d 630; Jackson v. Blue Flame Gas Co., 90 Idaho 393, 412 P.2d 418; Meridian Bowling Lanes, Inc. v. Brown, 90 Idaho 403, 412 P. 2d 586 (1966).

It is true that in the Nordling case a valid accord and satisfaction was found and enforced. This is readily distinguishable from the case at hand. There the check was accompanied by a letter which declared the check to be *in full payment* of the purchase price, and also the balance included $133 more than was due on the account for rent. Here, the notation on the check was, "Leveling in full. Home Place," a much less decisive and more confusing notation than in Nordling v. Whelchel Mines Co. Too, the Nordling facts were submitted to a jury which returned a verdict in favor of the existence of an accord and satisfaction while in this case the conflicting facts were submitted to the trier of facts, the trial court, which found against the existence of an accord and satisfaction. Thus, the Nordling case cannot be deemed authority in support of appellant's contention. There is no merit to this assignment of error.

 There also is no merit to appellant's second assignment of error. It is obvious from the record the trial court was correct in determining there had been no meeting of the minds or definite agreement reached by the parties concerning the cost to be paid for the leveling of, and performing of the other work on, the West Forty. The lower court therefore had no alternative except to resolve this issue on the basis of quantum meruit, i. e., to allow the respondent the reasonable value of services performed upon appellant's land to appellant's benefit. The uncontradicted testimony of a disinterested third party (L. C. Chaney), who was well qualified in this field, established that the reasonable hourly rate for the use of the type of equipment furnished by respondent together with an operator therefor, was $13.50 or $14.00. Thus the finding of the trial court that the reasonable value was $12.50 per hour cannot be deemed excessive or exorbitant. The fact that the amount determined as a reasonable value coincided with the amount sought by the respondent as the agreed value is immaterial, where, as here, the uncontra-

dicted evidence of a third party establishes the reasonable value to be at least the amount determined by the trial court. No definite rule exists for the determination of whether a recovery on a quantum meruit for services, work and labor, or incidental materials, is excessive, reasonable, or inadequate, but each case is to be determined from the facts and circumstances thereof. 98 C.J.S. Work and Labor § 65c, p. 823.

The evidence adduced more than amply supports the finding of the trial court, and it will not be disturbed on appeal.

Concerning appellant's third assignment of error, the type of question to which objections were sustained is typified by the following:

> "Q With regard to the Home Place, which is carried on that check, just what do you folks mean by 'Home Place'? What is your understanding of the 'Home Place' or what do you mean when you and your family talk about 'Home Place'?"

Respondent's attorney objected to this type of question on the ground that no proper foundation had been laid; and that it was irrelevant and immaterial, because there had been no prior showing by appellant that any understanding or connotation appellant and his wife had concerning what they meant by "Home Place" had ever been conveyed to respondent. By such questions appellant was, of course, attempting to establish the basis for the alleged accord and satisfaction. What he and his wife may have intended or connoted secretly and between themselves concerning the term "Home Place" cannot be deemed binding on respondent when he accepted the check without first showing that such understanding or connotation had been conveyed to the respondent. The trial court committed no error in ruling such evidence to be inadmissible on the grounds urged by respondent's counsel in objecting thereto. Murphy v. Mutual Life Ins. Co., 62 Idaho 362, 112 P.2d 993; Nordling v. Whelchel Mines Co.; supra; Clay v. Rossi, supra;

1 C.J.S. Accord and Satisfaction § 6, pp. 476–477.

Judgment is affirmed. Costs to respondent.

McFADDEN, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.